IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00716-RPM-MJW

PAM BOCK,

Plaintiff,

v.

APIM, LLC,

Defendant.

---

## RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Docket No. 22)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by Senior District Judge Richard P. Matsch on March 20, 2013

(Docket No. 4).

Now before the court for a report and recommendation is the Motion for Default

Judgment (Docket No. 22) filed by plaintiff Pam Bock.  The court has jurisdiction

pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

On March 19, 2013, plaintiff filed this case against defendant APIM, LLC, alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), see 15 U.S.C. § 1692 *et

seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3), and the

Colorado Fair Debt Collection Practices Act ("CFDCPA"), Colo. Rev. Stat. § 12-14-101

*et seq.*  In her Complaint, plaintiff alleges the following.  She is a natural person and a

2

"consumer." (Docket No. 1 at 2, ¶¶ 5, 6). Defendant is a debt collector as that term is

defined in the aforementioned statutes. (Docket No. 1 at 2, ¶¶ 7-8). Defendant,

through its collectors, including "Craig," harassed plaintiff by placing multiple daily calls

to her home telephone in an attempt to collect an alleged consumer debt from plaintiff

that originated from a credit card loan. (Docket No. 1 at 2-3, ¶¶ 10, 15). Plaintiff

repeatedly advised defendant that she had no knowledge of this account. (Docket No.

1 at 3, ¶ 16). Through her communications with defendant and her own research,

plaintiff learned that her ex-husband had opened a credit card in her name in or around

2000 without her knowledge or consent, and he ceased paying on it in 2002. (Docket

No. 1 at 3, ¶¶ 17, 19). Prior to defendant's contacts, plaintiff was unaware of this

account. (Docket No. 1 at 3, ¶18). When plaintiff advised "Craig" that she would not

pay the debt, he said, "f*ck you," and hung up the telephone. (Docket No. 1 at 3, ¶ 20).

Plaintiff called "Craig" back immediately after he hung up on her and requested to speak

with his supervisor, to which he responded that she needed to pay the "f*cking bill."

(Docket No. 1 at 3, ¶ 21). Plaintiff advised defendant on several occasions that this was

not a debt she had ever authorized. (Docket No. 1 at 3, ¶ 22). Defendant's collectors

proffered legal advice to her indicating she was responsible for debts that her ex-

husband incurs and threatened to garnish her future tax refunds if she did not pay, as

well as report this debt to the credit bureaus. (Docket No. 1 at 3, ¶ 23). Defendant did

not garnish any of plaintiff's tax refunds and lacked the intent to take such action when

the threat was made to do so. (Docket No. 1 at 3, ¶ 24). Plaintiff told defendant she

wanted their calls to stop, but the calls continued and thus could only have been placed

with the intent to harass plaintiff. (Docket No. 1 at 3-4, ¶ 25-28). During this time,

defendant called plaintiff several times using a pre-recorded, computer-recorded, or automated message.  (Docket No. 1 at 4, ¶ 29).

Defendant has not responded to the Complaint or otherwise appeared before the court in this case.

On March 20, 2013, this court set a Scheduling Conference for almost two months later on May 17, 2013 at 9:30 a.m.  (Docket No. 5).  On April 19, 2013, plaintiff's counsel moved to appear by telephone at that conference because she was getting married on May 19.  (Docket No. 6).  That motion was granted by this court (Docket No. 8).  One week before the conference, however, plaintiff moved to reschedule it because defendant had not returned the Waiver of Service or contacted plaintiff's counsel concerning the preparation of a proposed Scheduling Order.  (Docket No. 9).  That motion was granted, but the court set a telephone Status Conference at the time the Scheduling Conference was to be held.  (Docket No. 11).  During the Status Conference, the court reset the Scheduling Conference for June 20, 2013, at 9:00 a.m.  (Docket No. 12).  Plaintiff, however, did not serve defendant until June 3, 2013, and thus once again moved to continue the Scheduling Conference.  (Docket No. 14).  This court granted the motion and reset the Scheduling Conference for July 8, 2013, at 11:00 a.m., noting that the plaintiff would not be granted any further continuances of the conference.  (Docket No. 16).  One week before that conference, plaintiff moved for entry of default as to defendant APIM, LLC, pursuant to Fed. R. Civ. P. 55(a) (Docket No. 18), which was entered by the Clerk of Court the following day.  (Docket No. 19).  Just 22 minutes before the Scheduling Conference was to begin, local counsel entered an appearance on behalf of the plaintiff.  (Docket No. 20).  He then participated by

4

phone in the two-minute conference during which the court directed him to file a motion

for default judgment on or before July 15, 2013.  (Docket No. 21).  Plaintiff timely filed

that motion for default judgment (Docket No. 22) which is now before the court for a

report and recommendation.

Plaintiff seeks $6,673.50 in damages, comprised of $2,000.00 in statutory

damages for violations of the FDCPA and the CFDCPA[1] and $4,673.50 in attorney's

fees and costs.  (Docket No. 22 at 7).  Defendant has not responded to the plaintiff's

motion for default judgment.

## II. DISCUSSION

### A.  Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process

described in Federal Rule of Civil Procedure 55.  First, the party must seek an entry of

default from the Clerk of the Court under Rule 55(a).  Second, after default has been

entered by the Clerk, the party must seek default judgment according to the strictures of

Rule 55(b).  See Williams v. Smithson, 1995 WL 365988, at *1 (10th Cir. June 20, 1995)

(citing Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound

discretion."  Olcott v. Delaware Flood Co., 327 F.3d 1115, 1124 (10th Cir. 2003).  In

exercising that discretion, the court considers that "[s]trong policies favor resolution of

disputes on their merits."  In re Rains, 946 F.2d 731, 732 (10th Cir. 1991).  "[T]he default

---

[1]Although plaintiff originally also sought actual damages suffered pursuant to 15 U.S.C. § 1692k(a)(1) and statutory damages for each violation of  the TCPA, 47 U.S.C. § 227(b)(3) (Docket No 1 at 10), it appears she has now abandoned those requests.

judgment must normally be viewed as available only when the adversary process has

been halted because of an essentially unresponsive party." Id.  It serves to protect a

plaintiff against "interminable delay and continued uncertainty as to his rights."  Id. at

733.  When "ruling on a motion for default judgment, the court may rely on detailed

affidavits or documentary evidence to determine the appropriate sum for the default

judgment."  Seme v. E & H Proffessional Sec. Co., Civil Action No. 08-cv-01569-RPM-

KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence.  See Cessna

Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444-45 (10th Cir.

1983) ("[A] workable system of justice requires that litigants not be free to appear at

their pleasure.  We therefore must hold parties and their attorneys to a reasonably high

standard of diligence in observing the courts' rules of procedure. . . .  The threat of

judgment by default serves as an incentive to meet this standard.").  One such

consequence is that upon the entry of default against defendant, the well-pleaded

allegations in the complaint are deemed admitted.  See Olcott, 327 F.3d at 1125.

Even after default, however, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action since a party in default does

not admit mere conclusions of law.  GeoSpec1 Systems, LLC v. Infrastructure Corp. of

Am., Civil Action No. 13-cv-00407-PAB-BNB, 2013 WL 4011053, at *3 (D. Colo. Aug. 6,

2013).  A court need not accept conclusory allegations.  Id.  Although "[s]pecific facts

are not necessary" in order to state a claim, Erickson v. Pardus, 551 U.S. 89, 93 (2007)

(per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), the

well-pleaded facts must "permit the court to infer more than the mere possibility of

6

misconduct." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Bryson v. Gonzales</u>, 534 F.3d 1282, 1286 (10th Cir. 2008).

In this case, the Clerk of Court entered default against the defendant on July 2, 2013 (Docket No. 19).  Accordingly, the court accepts the well-pleaded facts in the plaintiff's Complaint as true.  Specifically, the court accepts as true plaintiff's allegations that (1) she is a consumer and defendant is a debt collector as those terms are defined by the FDCPA and the CFDCPA (Docket No. 1 at 2, ¶¶ 6 -8); (2) defendant contacted plaintiff between March and May 2012 in an attempt to collect on a debt, (Docket No. 1 at 2, ¶¶ 10-13); (3) defendant placed numerous harassing phone calls to plaintiff at her home (Docket No. 1 at 3, ¶ 13); and (4) in the course of attempting to collect her debt, defendant used fowl language (i.e., "f*ck you" and "f*cking bill"), told plaintiff that she was responsible for the debts that her ex-husband incurs, threatened to garnish her future tax refunds and to report the debt to the credit bureaus if she did not pay, and several times used a pre-recorded, computer-recorded, or automated message (Docket No. 1 at 3, ¶¶ 20, 21, 23, 29).

Taking these allegations as true, the court next determines whether these facts constitute a legitimate cause of action entitling plaintiff to default judgment.

**B.  FDCPA Violations**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Plaintiff claims that defendant violated 15 U.S.C. §§ 1692d (harassment in connection with the collection of an alleged debt when it called plaintiff repeatedly and continuously, when its collectors cursed at plaintiff, when it continued to call plaintiff even after she requested the calls cease, and when it engaged in other harassing or abusive conduct), 1692d(2) (using obscene or profane language when its collector cursed at plaintiff), 1692d(5) (causing a telephone to ring repeatedly or continuously with the intent to harass, abuse, or annoy the consumer), 1692e (using false, deceptive, or misleading representations or means in connection with the collection of a debt when it threatened to garnish plaintiff's future tax refunds without the intention to take such action and when it make other false, deceptive, or misleading representations), 1692e(4) (representing or implying that nonpayment of a debt would result in garnishment of any property or wages), 1692e(5) (threatening to take legal action that it did not intend to take when it misrepresented it would garnish plaintiff's future tax refunds without the intent or ability to do so), 1692e(10) (using false representations or deceptive means to collect or attempt to collect a debt when it threatened to garnish plaintiff's future tax refunds without the capacity and intention to take such action and when it made other false, deceptive, or misleading representations), and 1692f (using unfair and unconscionable means with plaintiff to collect or attempt to collect a debt when it called plaintiff repeatedly and continuously, when it cursed at plaintiff, when it continued to call plaintiff even after she requested that the calls cease, when it attempted to coerce plaintiff into believing that defendant had the capacity to garnish her future tax refunds,

8

and when it engaged in other harassing or abusive conduct). Plaintiff seeks $1,000.00 in statutory damages for defendant's violations. (Docket No. 22 at 5). The court finds that the plaintiff has established that defendant violated these various provisions of the FDCPA. The court will now determine the amount of plaintiff's statutory damages award.

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). The FDCPA sets a statutory maximum amount of damages at $1,000 per proceeding. See Goodmann v. People's Bank, 209 F. App'x 111, 114 (3d Cir. 2006); Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 650-52 (6th Cir.1994). "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling." Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998) (citing Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997)). In light of the foregoing, although plaintiff has established that defendant violated several provisions of the FDCPA, she can recover only up to $1,000.00 in statutory damages. See Goodmann, 209 F. App'x at 114; Santacruz v. Standley & Assoc., LLC, Civil Action No. 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *7 (D. Colo. Mar. 17, 2011).

Pursuant to 15 U.S.C. § 1692k(b)(1), to determine the amount of statutory damages, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 578 (2010) (the court "must" consider the provisions of

9

Section 1692k(b) in awarding statutory "additional damages").  In this case, defendant violated several provisions of the FDCPA.  In addition, defendant's violations were persistent.  Defendant called plaintiff at her home repeatedly despite plaintiff advising defendant that the account was not hers, she had no knowledge of the account, and she had not authorized the debt.  "Craig" used fowl language toward plaintiff. Furthermore, defendant proffered legal advice to plaintiff, indicating she was responsible for debts that her ex-husband incurs, and defendant threatened to garnish plaintiff's future tax refunds if she did not pay, as well as report this debt to the credit bureaus.  Based on the foregoing, the court finds that the frequency, persistent nature, and willfulness of defendant's noncompliance with the FDCPA justifies an award of $1,000 in statutory damages against defendant.  See, e.g., Harding v. Check Processing, LLC, 2011 WL 1097642, at *3 (N.D. Ohio, March 22, 2011) (awarding maximum statutory damages because there were several purposeful violations of FDCPA alleged in the Complaint, which were all taken as true).

### C.   Colorado FDCPA Violations

Like the federal statute, the CFDCPA "shares the remedial purpose of protecting consumers against debt collection practices that take advantage of . . . persons who receive a debt collection communication." Flood v. Mercantile Adjustment Bureau, LLC, 176 P.3d 769, 773 (Colo. 2008).  The CFDCPA allows individuals to bring actions against debt collectors who violate its provisions within one year of the violations.  §§ 12-14-113(1), (4), C.R.S.  Pursuant to the CFDCPA, plaintiffs can recover up to $1,000.00 in statutory damages for violations of its provisions.  § 12-14-113(1)(b)(I), C.R.S.

10

Because Congress did not intend for the FDCPA to preempt state regulation of debt collection practices, states may provide greater protection to consumers than those available under the FDCPA.  15 U.S.C. § 1692n ("For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter").  However, individuals may not recover damages under the CFDCPA if they recover damages for violations of "like provision[s]" under the FDCPA.  § 12-14-113(6), C.R.S.[2]  Because the CFDCPA is patterned on the FDCPA, the court will construe the term "like provision" to mean an overlapping or equivalent provision contained in both statutes.  See Udis v. Universal Communications Co., 56 P.3d 1177, 1183 (Colo. App. 2002) (construing § 12-14-107, C.R.S., in light of 15 U.S.C. § 1692e(10) to determine whether communication through a telegram format is deceptive under the CFDCPA); Flood, 176 P.3d at 777 (relying on cases construing 15 U.S.C. § 1692c(b) to determine whether the use of an automated mailing system violates § 12-14-105(2), C.R.S., which prohibits debt collectors from discussing a plaintiff's debt with a third party).  By contrast, provisions of the CFDCPA that provide additional or different protection than is available under the FDCPA are not "like provisions."  See, e.g., Khosroabadi v. North Shore Agency, 439 F. Supp.2d 1118, 1125 (S.D. Cal. 2006) (noting that a debt collector did not violate the FDCPA when its collection letter complied with the requirements of the FDCPA, but did not include additional disclosures required by California's Rosenthal Fair Debt Collection

---

[2]Section 113(6) states, "[t]he policy of this state is not to award double damages under this article and the federal 'Fair Debt Collection Practices Act,' 15 U.S.C. sec. 1692 et seq.  No damages under this section shall be recovered if damages are recovered for a like provision of said federal act."  § 12-14-113(6), C.R.S.

11

Practices Act).

Here, plaintiff first alleges that the defendant violated the CFDCPA, § 12-14-106, C.R.S. (Docket No. 1 at 8), when it called her repeatedly and continuously, cursed at her on two occasions, continued to call her even after she requested that the calls cease, attempted to coerce her into believing that it had the capacity to garnish her future tax refunds, and engaged in other harassing or abusive conduct.  (Docket No. 1 at 8, ¶¶ 56-57).  Next, plaintiff alleges that defendant violated the CFDCPA, § 12-14-106(e), C.R.S. (prohibiting a debt collector from causing a telephone to ring or engage any person in conversation repeatedly or continuously with the intent to annoy, abuse, or harass) when it called plaintiff continuously with the intent to annoy her.  (Docket No. 1 at 9, ¶¶ 58-59).  In addition, defendant allegedly violated the CFDCPA, §§ 12-14-107(1) and 12-14-107(1)(k), C.R.S. (prohibiting a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt and from making false representations or using deceptive means to collect a debt) by threatening to garnish plaintiff's future tax refunds without the capacity and intention to take such action and when it made other misleading and deceptive statements.  (Docket No. 1 at 9, ¶¶ 60-62).  Finally, plaintiff alleges that defendant violated the CFDCPA, § 12-14-108, C.R.S. (prohibiting a debt collector from using any unfair or unconscionable means in order to collect a debt) when it called plaintiff repeatedly and continuously, cursed at plaintiff, continued to call her even after she requested that the calls case, attempted to coerce plaintiff into believing it had the capacity to garnish her future tax refunds, and engaged in other harassing or abusive conduct.  (Docket No. 1 at 9-10, ¶¶ 63-64).

Taking these allegations as true, the court finds that plaintiff has established violations of these provisions of the CFDCPA.  These provisions, however, overlap the FDCPA violations/provisions outlined above for which this court is recommending that plaintiff be awarded $1,000 in statutory damages against defendant.  Inasmuch as individuals may not recover damages under the CFDCPA if they recover damages for violations of "like provision[s]" under the FDCPA, the court recommends that the plaintiff not recover under the CFDCPA.

### D.   Reasonable Attorney Fees

The FDCPA prescribes that a successful party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  Because plaintiff has prevailed in this action, she is entitled to recover her reasonable attorney fees and costs.

When determining the amount of a fee award, the court should follow the three-step process set forth in Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983), overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987); Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 2011 WL 3568165, at *2 (D. Colo. Aug. 15, 2011).  The first step in determining a fee award is to determine the number of hours reasonably spent by counsel for the party seeking the fees.  Malloy v. Monahan, 73 F.3d 1012, 1017 (10th Cir. 1996); Ramos, 713 F.2d at 553.  Once the court has determined the number of hours reasonably spent, it must then determine a reasonable hourly rate of compensation.  Ramos, 713 F.2d at 555.  "A reasonable rate is the prevailing market rate in the relevant community."  Malloy, 73 F.3d at 1018 (citing Blum v. Stenson, 465 U.S. 885, 897 (1984)).  The party seeking the

award has the burden of persuading the court that the hours expended and the hourly

rate are both reasonable.  Malloy, 73 F.3d at 1018.

The third step consists of multiplying the reasonable hourly rate by the number of

hours reasonably expended to determine the "lodestar" amount.  Brokers' Choice, 2011

WL 3568165, at *2 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Once the

court determines the lodestar amount, it may "adjust the lodestar upward or downward

to account for the particularities" of the work performed.  Phelps v. Hamilton, 120 F.3d

1126, 1131 (10th Cir. 1997).

*1. Number of Hours.*  A party seeking an award of attorney fees must establish

the reasonableness of each dollar and each hour for which the party seeks an award.

Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995).  When determining the

reasonableness of hours expended, the court reviews attorneys' billing entries to ensure

that the attorneys exercised proper billing judgment.  Case v. Unified Sch. Dist. No. 233,

Johnson Cnty., Kan., 157 F.3d 1243, 1250, 1251 (10th Cir. 1998) ("The district court is

not bound by the opinions of the parties regarding the reasonableness of the time they

spent on the litigation.").  Factors considered in a reasonableness determination

include: (1) whether the amount of time spent on a particular task appears reasonable in

light of the complexity of the case, the strategies pursued, and the responses

necessitated by an opponent's maneuvering; (2) whether the amount of time spent is

reasonable in relation to counsel's experience; and (3) whether the billing entries are

sufficiently detailed, showing how much time was allotted to a specific task.  Brokers'

Choice, 2011 WL 3568165, at *2 (citing Rocky Mountain Christian Church v. Board of

County Comm'rs of Boulder County, 2010 WL 3703224, at *2-3 (D. Colo. Sept. 13,

2010)).

　　"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.  Although the court is obligated to exclude hours not reasonably expended from the fee award, it need not "identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" Malloy, 73 F.3d at 1018 (quoting Hensley, 461 U.S. at 437); Fox v. Vice, 131 S. Ct. 2205, 2216 (2011) ("[C]ourts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). The court considers whether the fees pertain to tasks that would ordinally be billed to a client.  See Ramos, 713 F.2d at 554.  The Supreme Court has found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of who performs them."  Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989).  Plaintiff must demonstrate that her counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended.  Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1257 (10th Cir. 2005).  "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." Case, 157 F.3d at 1250.

　　A review of the docket and the few filings in this case shows that this is a very routine FDCPA case brought by counsel who avers that she primarily handles matters

15

brought under the FDCPA and other consumer statutes.  Furthermore, a search of the

court's CM/ECF system shows that the Kimmel law firm has filed a number of such

cases in this District, and a quick search on WestLaw shows that the Kimmel firm also

files a very large number of FDCPA cases around the country.  A comparison of the

filings in this case with those in other cases in this District shows that they essentially

are routine, boilerplate pleadings and motions.  It appears to be the firm's common

practice to seek at least one, if not more, continuance of the Scheduling Conference

and to file motions to appear by telephone at any proceedings.  Furthermore, the motion

for entry of default and motion for default judgment in this case were virtually identical to

those filed in the case that was recently heard by Judge Brimmer, <u>Peterson-Hooks v.</u>

<u>First Integral Recovery LLC</u>, Civil Action No. 12-cv-0109-PAB-BNB .  In fact, while the

documented hours allegedly worked in this case totals 19.0 (Docket No. 22-1 at 7), the

number of hours claimed in the motion itself (30.2 hours) is the exact number of hours

claimed in the virtually identical motion filed by the same plaintiff's counsel in Judge

Brimmer's case.  <u>Peterson-Hooks v. First Integral Recovery LLC</u>, Civil Action No. 12-cv-

0109-PAB-BNB - Docket No. 26 at 5.  Such an error supports this court's conclusion

that the plaintiff's filings in this case, including the motion for default judgment, are stock

pleadings and motions that plaintiff's counsel use repeatedly in their multitude of

FDCPA cases into which they merely cut and paste the caption and particular facts.

　　　The plaintiff's filings in this case were merely the filing of the Complaint (Docket

No. 1), a motion for leave to appear by telephone for the May 17, 2013, scheduling

conference (because counsel was getting married that weekend) (Docket No. 6), two

motions to continue the Scheduling Conference (Docket Nos. 9 and 18),[3] an executed

summons (Docket No. 13), a notice of entry of appearance by WeAppear.com local

counsel (Docket No. 20), and the motions for entry of default (Docket No. 18) and for

default judgment (Docket No. 22).  In addition, there were appearances at two very brief

proceedings - a six-minute Status Conference on May 17, 2013 (Docket No. 12), and a

two-minute Status Conference on July 8, 2013 (Docket No. 21).

     Despite the routine nature of this case and the few boilerplate filings, plaintiff

seeks $3,928.50 in attorney fees and $745.00 in reasonable litigation costs and

expenses. (Docket No. 22 at 6).  The court has reviewed the documentation submitted

by plaintiff's counsel and finds, "like the vast majority of courts to have considered fee

applications on behalf of the Kimmel Firm in similar cases," Barile v. Allied Interstate,

Inc., 2013 WL 795649, at *2 & n.2 (S.D.N.Y. Jan. 30, 2013), report and

recommendation adopted by 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013), that the number

---

[3]This court notes that plaintiff's counsel does not seem to make quick work of service on defendants in these cases in order to be prepared for the Scheduling Conference as originally scheduled, thus requiring the filing of motions for continuances, which wastes the court's limited resources.  In this case, on March 20, 2013, this court issued an Order setting the Scheduling Conference on May 17, 2013.  (Docket No. 5). Knowing that date, plaintiff's counsel nevertheless waited almost two weeks, until April 3, 2013, before sending defendant the Complaint and Waiver of Service forms.  That correspondence was apparently not delivered until April 15, 2013.  Plaintiff subsequently sought a continuance of the May 17 conference (Docket No. 9) because defendant had not yet returned the Waiver of Service or contacted plaintiff's counsel concerning the preparation of proposed Scheduling Order.  The court held a brief Status Conference on May 17 and reset the Scheduling Conference to June 20, 2013 (Docket No. 12).  The executed summons showed that defendant was not served until almost three weeks later on June 5, 2013 (Docket No. 13 at 2).  Thus, three days before the rescheduled conference, plaintiff once again sought a continuance of the Scheduling Conference, noting that defendant's Answer was not due until June 26, 2013, and that neither an attorney nor the defendant had contacted plaintiff to discuss the matter.  (Docket No. 14).  The conference was thus reset to July 8.  (Docket No. 16).

of hours claimed and fees sought are excessive and warrant reduction.  See also

Dickey v. Allied Interstate, Inc., 2013 WL 4399212, at *2 (S.D.N.Y. Aug. 1, 2013)

(applying a 20 percent across-the-board reduction to the hours requested by the

Kimmel firm, noting multiple .1 and .2 hour entries for unspecified conference calls,

internal e-mails, review of mundane court notices, as well as redundant internal

consultations as well as overstaffing); Zavodnick v. Gordon & Weisberg, P.C., 2012 WL

2036493 (E.D. Penn. June 6, 2012) (finding the hours sought by the Kimmel firm were

"excessive, noncompensable, and duplicative," noting that the firm "actually performed

precious little original work on Plaintiff's behalf."); Conklin v. Pressler & Pressler LLP,

2012 WL 569384, at *3, n.2, *5 (D.N.J. Feb. 21, 2012) (finding it appropriate to reduce

the amount of fees sought by the Kimmel firm, noting the numerous decisions reducing

the firm's fees, finding that many of counsel's submissions were identical or nearly

identical to those submissions in other cases, suggesting that the firm "has billed a

number of defendants for the same work on more than one occasion and that such a

practice should not be condoned or permitted, and finding that the hours requested "are

unreasonable in light of the repetitive nature of [the firm's] FDCPA practice and the

boilerplate nature of the pleadings submitted in this action.").

      The plaintiff's timekeeping records are very detailed, showing how much time

was allotted to the various tasks.  However, as another court recently observed with

respect to this same firm's time records in a similar case, "the very detail often hides

exaggeration and excess."  Barile, 2013 WL 795649, at *7.  For example, just as in

Barile, plaintiff's law firm has "billed multiple entries of '0.1 hour' - often several on one

day – for very brief, mundane tasks such as emailing a document, e-filing, or receiving a

18

notice of appearance or other notification from the Court's automated Electronic Case Filing ('ECF') system.  This excessive specificity appears designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task.  Further, when each of the attorneys or staff who are parties to an exchange of extremely brief emails engage in this practice, the result is 12 minutes or more billed for communications that likely took one or two minutes, if not less."  Id.  As in Barile, this court recommends that such apparently inflated entries be stricken or reduced as set out in the attached marked-up billing records.  It is also difficult, as in Barile, to discern from "block-billed entries" (entries that cluster two or three small tasks and then billing the entire entry at .2 or .3 hours) whether any of the listed tasks might actually have required the time necessary to justify the total amount billed.  In addition, the court finds duplication of effort.  Further, given senior counsel's purported experience in FDCPA cases, billing for review of the pleadings here by other counsel in the same firm is unreasonable.

The court further finds that plaintiff should not be entitled to an award of attorney and paralegal fees and costs that are sought regarding the Kimmel firm obtaining and using local counsel from an on-line site "WeAppear.com" to appear for the two-minute Status Conference on July 8, 2013.  The July 8 hearing date was set more than one month before, and thus counsel had adequate notice of the date and time of the conference.  (Docket No. 14).  Furthermore, plaintiff's own billing records reflect that on the date of that conference, the Kimmel firm contacted my chambers and was advised by my law clerk that they could appear via phone.  Instead of one of the several firm attorneys who had worked on the file calling the court for the brief Status Conference,

almost two hours were billed for various actions taken with respect to having an outside attorney, Troy Krenning, from WeAppear appear by telephone.  In addition, plaintiff seeks reimbursement of Mr. Krenning's $300 fee for that appearance as a reasonable cost incurred in this action.  The court finds that the almost two hours billed for in-house e-mails and discussions about Mr. Krenning's appearance, getting Mr. Krenning up to speed on the status of the case, approving Mr. Krenning's rate (from $200 to $300 for the appearance), Mr. Krenning's report concerning the brief status conference, and review of the ECF filings concerning the status conference should not be awarded to plaintiff.  Plaintiff's counsel could have merely appeared for this two-minute conference by telephone and billed 0.1 hours.  Defendant should not have to incur these extra fees and costs due to plaintiff's counsels' apparent unavailability for a conference that was scheduled more than one month before and for which counsel was being permitted to participate by telephone.  This court finds that the amount sought for the activities of the Kimmel firm and Mr. Krenning for this brief proceeding is excessive and should be denied.

   *2.  Hourly Rate.*  Plaintiff requests attorneys' fees calculated at the rate of $325.00 per hour for founding partner Craig Thor Kimmel, who is in charge of the firm's FDCPA practice group (Docket No. 22-3 at 1, 2,  4, ¶ 18); $250.00 per hour for senior counsel Amy L. Bennecoff (Docket No. 22-2 at 8, ¶ 30) and Angela K. Troccoli; $225.00 per hour for attorney Suzanne M. Pontious (Docket No. 22-4 at 3, 14); $200.00 per hour for attorney Kelleher (Docket No. 22-3 at 5 ¶ 23); $110.00 per hour for paralegal Jason Ryan (Docket No. 22-3 at 5, 21), and $80.00 per hour for paralegal Pete Keltz (Docket Nos. 22-1 at 2; 22-3 at 5, 22).  The court notes attorney Troccoli did not submit an

affidavit, and thus there has been no basis shown for allowing Troccoli more than the

$200 per hour sought for attorney Kelleher.

A "reasonable rate" is defined as the prevailing market rate in the relevant

community for an attorney of similar experience.  Guides, Ltd. v. Yarmouth Group Prop.

Mgmt., Inc., 295 F.3d 1065, 1078 (10th Cir. 2002); Malloy v. Monahan, 73 F.3d at 1018.

The party requesting fees bears "the burden of showing that the requested rates are in

line with those prevailing in the community."  Ellis v. University of Kan. Med. Ctr., 163

F.3d 1186, 1203 (10th Cir. 1998) (quotation marks omitted).  In order to satisfy her

burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own

affidavits – that the requested rates are in line with those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience and reputation."

Blum, 465 U.S. at 895 n.11.  "Unless the subject of the litigation is so unusual or

requires such special skills that only an out-of-state lawyer possesses, the fee rates of

the local area should be applied even when the lawyers seeking fees are from another

area."  Bangerter, 61 F.3d at 1510 (quotation marks omitted).

In support of the rates for the attorney fees listed, Mr. Kimmel states that he has

been practicing in the area of commercial litigation since 1989.  Docket No. 22-3 at 3.

In addition, Mr. Kimmel states that he has represented thousands of clients and has

participated in numerous jury trials and arbitrations.  Id.  Mr. Kimmel claims that his

hourly billable rate is typically $425.00, but he has reduced his hourly rate to $325.00 for

work in this District.  Id. at 4, ¶ 18.  Mr. Kimmel argues that a rate of $325.00 is a fair,

reasonable, market rate for an attorney of similar credentials and experience in this

District.  Id.  Two months before the motion for default judgment was filed in this case,

21

however, Judge Brimmer disagreed with Mr. Kimmel's same assertion in another

FDCPA action, <u>Peterson-Hooks v. First Integral Recovery, LLC</u>, No. 12-cv-01019-PAB-

BNB (at Docket No. 27 in that case), 2013 WL 2295449, at *7 (D. Colo. May 24, 2013),

yet Mr. Kimmel thereafter sought the same higher rate in this case, which this court

finds puzzling.  <u>See</u> <u>Conklin v. Pressler & Pressler LLP</u>, 2012 WL 569384, at *5 (D.N.J.

Feb. 21, 2012) (noting it was not the first time the Kimmel firm fees had been reduced

by a court, finding "itself puzzling over [the firm's] insistence on claiming the same fee

rates in each of its FDCPA cases," and noting that "[s]hould another such petition reach

this Court in the future, we hope not to have to puzzle over it again.").  This court

likewise disagrees with Mr. Kimmel's assertion that a $325 per hour rate is fair and

reasonable here.

       As noted by Judge Brimmer, the weight of authority establishes that the

prevailing rate in Colorado is $250.00 per hour for attorneys representing clients in

FDCPA cases.[4]  The court notes that there has been no showing that the services

provided in this case were so "unusual" or "special" to require out-of-state counsel.

<u>Bangerter</u>, 61 F.3d at 1510.  This is a typical FDCPA claim.  Furthermore as noted by

Judge Brimmer, $250.00 per hour accords with the Consumer Law Attorney Fee Survey

amount for attorneys in the Western region with ten or more years of experience.  <u>See</u>

Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report

---

[4] As Judge Brimmer noted, this holding is consistent with other decisions in this District.  <u>See, e.g.</u>, <u>Nuanes v. NCC Bus. Servs., Inc.</u>, Civil Action No. 12-cv-0228-WJM-MJW, 2012 WL 5464598 (D. Colo. Nov. 9, 2012); <u>Castro v. First Nat'l Collection Bur., Inc.</u>, Civil Action No. 11-cv-02298-REB-KMT, 2012 WL 4468318 (D. Colo. Sept. 27, 2012); <u>Howard v. Midland Credit Mgmt., Inc.</u>, Civil Action No. 11-cv-03123-PAB-BNB, 2012 WL 4359361 (D. Colo. Sept. 24, 2012).

2010-2011 at 42, available at

www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf.  Accordingly, this

court also concludes that $250.00 is a reasonable hourly rate in this District for Mr.

Kimmel.  The court finds that hourly rates of $250.00 for Ms. Bennecoff, $225.00 per

hour for Ms. Pontious, and $200.00 per hour for Mr. Kelleher and Ms. Troccoli are also

reasonable.

  The court, however, finds the hourly rates sought for the two paralegals are not

reasonable.  As Judge Brimmer noted, the Consumer Law Attorney Fee Survey lists the

median paralegal rate for the Western region as between $75.00 and $99.00.  See

Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report

2010-2011 at 42, available at

www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf.  As this court has

found in past cases, the court finds here that an hourly rate of $75 would be a

reasonable hourly rate of compensation in this area.  See Shrader v. Beann, 2012 WL

2411969, at *3 (D. Colo. June 26, 2012) ($75 is a reasonable hourly rate of

compensation in this area for legal assistant time), aff'd, 503 Fed. Appx. 650, 655 (10th

Cir. Nov. 29, 2012) (district court did not abuse its discretion in the amount of attorney

fees awarded to defendant).

  **3.  *Lodestar Amount.***  Based on the conclusions above, the court finds that the

lodestar figure for plaintiff's attorney fee request is $2,520.00.  This fee is broken down

as follows: Attorney Angela K. Troccoli - .8 hours at an hourly rate of $200.00=$160.00;

Attorney Craig Thor Kimmel - 1.3 hours at $250.00 per hour = $325.00; Attorney

Christopher Kelleher - 1.8 hours at $200.00 per hour = $360.00; Attorney Amy

Bennecoff - 5.5 hours at $250 per hour = $1,375.00, and .1 hour at the paralegal rate =

$7.50; Attorney Suzanne Pontious, .1 hour at $225.00 per hour = $22.50; Paralegal

Jason Ryan - .2 hours at $75.00 per hour = $15.00; and Paralegal Pete Keltz - 3.4

hours at $75 per hour = $255.00.  This fee award is reasonable given the issues

presented in this case and it is also adequate to attract competent counsel to similar

cases without producing a windfall for attorneys.  Blum, 465 U.S. at 893-94.

    With regard to plaintiff's requests for costs, this court recommends that if the

recommendations made above are approved, that plaintiff have her costs and file a bill

of costs on the required form with the Clerk of Court pursuant to D.C.COLO.LCivR 54.1

following entry of judgment or final order.

## III.  CONCLUSION

    For the foregoing reasons, it is

    **RECOMMENDED** that the plaintiff's Motion for Default Judgment (Docket No. 22)

be **GRANTED** in part and **DENIED** in part as follows.  It is recommended that the

motion be granted to the extent that default judgment enter against defendant APIM,

LLC.; that plaintiff Pam Bock be awarded $1,000.00 in statutory damages against

defendant APIM, LLC, based on defendant's violations of the FDCPA; and that plaintiff

Pam Bock be awarded $2,520.00 in attorney fees.  It is recommended that the motion

be denied with respect to plaintiff's claim for $1,000.00 in statutory damages against

defendant APIM, LLC, based on defendant's violations of the CFDCPA.  Finally,  if the

recommendations made above are approved, it is further recommended that plaintiff

have her costs and file a bill of costs on the required form with the Clerk of Court

pursuant to D.C.COLO.LCivR 54.1 following entry of judgment or final order.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

DATED:  November 7, 2013.

BY THE COURT:

s/Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge